UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROZETTA PACHECO,<br><br>    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. CV 13-6908 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Rozetta Pacheco filed this action on September 27, 2013. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.) On May 22, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for proceedings consistent with this opinion.

# I.

## PROCEDURAL BACKGROUND

On August 6, 2010, Pacheco filed applications for disability insurance benefits and supplemental security income alleging an onset date of January 28, 2010. Administrative Record ("AR") 12, 102-14. The applications were denied initially and on reconsideration. AR 12, 40-43. Pacheco requested a hearing before an Administrative Law Judge ("ALJ"). AR 59. On March 27, 2012, the ALJ conducted a hearing at which Pacheco and a vocational expert ("VE") testified. AR 26-39. On April 16, 2012, the ALJ issued a decision denying benefits. AR 12-21. On July 26, 2013, the Appeals Council denied the request for review. AR 1-4. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Pacheco has not engaged in substantial gainful activity since January 28, 2010, the alleged onset date. AR 14.

The ALJ found that Pacheco has the severe impairments of depressive disorder, NOS; avoidant and passive aggressive personality features; left shoulder injury with surgical repair and residual pain; scleroderma; and Raynaud's disease of the left upper extremity. AR 14. She has the residual functional capacity ("RFC") to perform sedentary work, except she is limited to simple, repetitive tasks, and can occasionally balance and crawl. AR 16. She is precluded from climbing ladders and reaching overhead with the left arm. *Id.* She is precluded from unprotected heights, hazardous equipment, and forceful use of the left arm. *Id.* She is unable to perform any past relevant work, but

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

there are jobs that exist in significant numbers in the national economy that she can perform. AR 19-20.

### C. Credibility

Pacheco contends the ALJ erred in his credibility finding.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Pacheco's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 19.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ found that Pacheco's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC. AR 19.

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional

4

restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13)[2] (quotation marks omitted). The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Pacheco testified that she stopped working because of "horrible" stress, panic issues, and left arm, shoulder and neck problems. AR 19, 30. She cannot use her left arm. AR 19, 32. She has debilitating migraines two or three times a week and has to be in bed the whole day. AR 19, 31. She has 15-20 bad days per month when she does not do anything. AR 19, 32-33.

The ALJ found Pacheco's testimony "exaggerated." AR 19. He discounted Pacheco's credibility on the ground that the medical evidence did not support Pacheco's claims of disabling pain and limitations. *Id.* He noted that the considerable stress Pacheco testified about "was not present in the various mental exams." *Id.* The migraines were "not mentioned to any significant extent in the ongoing worker's compensation case."[3] *Id.* Although she testified that she could not lift her left arm, Dr. Frykman, a worker's compensation examiner, provided limitations only against continuous overhead work and continuous reaching with the left upper extremity. AR 19, 394. The ALJ additionally noted

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[3] Pacheco argues that the ALJ's finding that the migraines were "not mentioned to a significant extent" in the worker's compensation records is not supported by substantial evidence. JS 6-7 (citing AR 193-94, 198, 212-13, 245, 252-53).

5

that Pacheco's complaints of good and bad days were not part of the medical record. AR 19.

Lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony." *Burch*, 400 F.3d at 681. Because the ALJ solely relied on the lack of supporting medical evidence when weighing Pacheco's credibility, this matter is remanded. The Commissioner argues that Pacheco's failure to seek psychiatric treatment undermined her claims of disabling mental conditions. However, the ALJ did not consider lack of treatment in the credibility determination, and the court cannot rely on this reason. AR 19; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 n.2 (9th Cir. 2008); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). On remand, the ALJ should reevaluate Pacheco's credibility.

### D. Opinions of Drs. Allen and Backman

Pacheco contends the ALJ erred in not addressing the opinions of Drs. Allen and Backman regarding preclusion from work involving bright lights and stress.[4]

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

The ALJ considered and discussed Dr. Allen's evaluation of Pacheco's physical impairments. AR 16-17, 212-55, 320-64. Dr. Allen, who conducted a Qualified Medical Examination for Pacheco's worker's compensation claim in

---

[4] Pacheco does not appear to argue that the ALJ erred in not addressing a preclusion from excessive noise.

6

December 2009, documented Pacheco's complaints of headache, neck pain, left shoulder pain and left arm pain. AR 16, 212, 217. In 2006, Pacheco reported experiencing worsening migraine headaches. AR 17, 213. She has headaches approximately every one and a half to two weeks and notes that the headaches increase with stress. AR 17, 213. She also experiences persistent shoulder pain extending to the neck, pain from the left elbow extending towards the shoulder blade, difficulty sleeping due to pain, and depression. AR 17, 213. Dr. Allen stated that Pacheco could perform work duties with preclusions to the shoulder and "she should avoid increased stress and the environment and excessive noise that can precipitate headaches." AR 17, 253. The ALJ gave "less weight to Dr. Allen's opinion [recommending light work] in order to provide [Pacheco] with benefit of doubt."[5] AR 19.

Pacheco argues that the ALJ erred in not addressing Dr. Allen's additional limitations relating to her migraine headaches. As discussed above, the ALJ noted Dr. Allen's limitations relating to her migraine headaches. However, when weighing the medical opinions, the ALJ focused on Dr. Allen's limitation to light work. AR 19. Pacheco concedes that Dr. Allen's limitations relating to her migraine headaches are "ambiguous." JS 20; AR 253. It is the ALJ's province to interpret the medical evidence. *See Moncada*, 60 F.3d at 523.

---

[5] "[I]t is important to distinguish between those portions of the physicians' reports that represent the physicians' medical findings and those portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation." *Coria v. Heckler*, 750 F.2d 245, 247 (9th Cir. 1984). Because the tests for Social Security disability and workers' compensation are different, "the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the claimant's] disability for worker's compensation purposes." *Id.* "On the other hand, the physicians' findings, *qua* findings, do not necessarily suffer from similar defects." *Id.* at 248. (emphasis in original). "[T]he ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight." *Id.*

7

Pacheco argues that even setting aside Dr. Allen's ambiguous limitations, the ALJ erred in not considering Dr. Backman's preclusion from working in a "stressful environment" and bright lights. AR 245. Summaries of Dr. Backman's reports from June-September 2009 are contained within approximately 30 pages of Dr. Allen's review of outside records. AR 218-46. According to Dr. Allen, Pacheco was seen by Dr. Backman in June 2009 for neurologic treatment and was subsequently followed by Dr. Backman and his PA. AR 252. They felt her migraines were related to exacerbation of her left shoulder and stress related to severe pain. *Id.* Dr. Backman opined that Pacheco could return to work as a greeter with one-handed light duty. AR 245. She could work with a prophylactic preclusion of avoiding noise, stressful environment and bright lights. AR 245-46, 252.

The ALJ does not discuss the summaries of Dr. Backman's prophylactic preclusion. The ALJ is not required to address every detail of a consultative examining physician's report or every piece of evidence in the record in reaching a disability determination. *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). However, if the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. *See* SSR 96-8p, at *7; *Widmark v. Barnhart*, 454 F.3d 1063, 1067-68 (9th Cir. 2006). Dr. Backman's preclusion is summarized and interpreted by Dr. Allen. The ALJ's consideration of Dr. Allen's statements regarding Pacheco's limitations based upon the records was reasonable. *See Carmickle*, 533 F.3d at 1165 (upholding ALJ's decision to rely on treating physician's statements regarding the plaintiff's limitation rather than physician's summary agreement with another physician) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985) ("If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ.")).

8

Pacheco also notes that the ALJ "ignored a similar opinion" by Dr. Bagner, a psychiatric consultative examiner, and that the ALJ failed to incorporate Dr. Bagner's mild to moderate limitation in responding to the normal stresses of work into the RFC assessment. AR 274. The ALJ discussed Dr. Bagner's opinion. AR 18. Dr. Bagner diagnosed depressive disorder, not otherwise specified, and assigned a GAF score of 60. AR 18, 273. He opined that Pacheco would have no limitations interacting with supervisors, peers, and the public, or completing simple tasks. AR 18, 274. Pacheco would have mild limitations maintaining concentration and attention and completing complex tasks, and mild to moderate limitations handling normal stresses at work and completing a normal workweek without interruption. AR 18, 274. The ALJ gave "great weight" to Dr. Bagner's opinion, the opinion of Dr. Frank, who provided an AME in psychiatry, and the State Agency opinion of Dr. Daugherty. AR 19.

Contrary to Pacheco's contention, the ALJ properly credited Dr. Bagner's opinion to the extent it was consistent with other medical evidence in the record. *See Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.") Here, Drs. Frank and Daugherty concluded that Pacheco's ability to handle stress and complete a normal workweek without interruption did not significantly impair her functioning or prevent her from working. AR 18-19, 275-77, 306-07. The fact that Dr. Bagner concluded Pacheco would have mild to moderate limitations handling normal stresses at work and completing a normal workweek without interruption does not make his opinion inconsistent with the opinions of Drs. Frank and Daugherty.

Pacheco has not shown error.

9

### E. Opinion of Dr. Frykman

Pacheco contends the ALJ erred in not adopting Dr. Frykman's grip preclusion.

As the ALJ discussed, AME Dr. Frykman concluded in September 2008 that Pacheco was restricted from heavy lifting or gripping with the left upper extremity, lifting more than 15 pounds occasionally with the left upper extremity, and performing continuous overhead work and continuous reaching with the left upper extremity. AR 17, 19, 243, 250, 394. Dr. Frykman commented that Pacheco was not making full effort on gripping the Jamar Dynamometer because of the wide variation in grip strength and the absence of a left wrist or hand injury. AR 17 n.1, 393.[6] He noted that Pacheco's grip on the left was stronger when he saw her the prior year when her left upper extremity condition was worse. AR 17 n.1, 393. He estimated Pacheco lost 50% of her pre-injury capacity for lifting, pushing, pulling, gripping, grasping, pinching, holding, torquing, finger dexterity, and other activities of comparable physical effort with the left upper extremity. AR 395.

The ALJ gave "great weight" to the November 2010 opinion of Dr. Pataki, a State Agency medical consultant, finding it consistent with the records. AR 19, 263-70. Dr. Pataki opined that Pacheco could occasionally reach with the left upper extremity and had no gripping limitations. AR 17, 266.

The RFC precluded overhead reaching with the left arm and "forceful use of the left arm." AR 16. In the hypothetical question to the VE, the ALJ clarified that "forceful use of the left arm . . . would be for pushing and pulling, twisting, torquing, that sort of thing." AR 37. The Commissioner argues "the ALJ appropriately adopted Dr. Pataki's findings that [Pacheco] did not have any fine-manipulation limitations." JS 26. However, due to the vague preclusion of

---

[6] The ALJ mistakenly refers to "AME Dr. Allen" in footnote 1, but cites the findings of Dr. Frykman. AR 17 n.1, 393.

10

"forceful use of the left arm," it is unclear whether the ALJ adopted Dr. Frykman's grip preclusion.

On remand, the ALJ must clarify whether the RFC includes a preclusion involving grip.

### F. Opinion of Dr. Pataki

Pacheco contends the ALJ erred in not adopting Dr. Pataki's opinion that she can only occasionally reach with the left upper extremity.

Dr. Pataki, a State Agency medical consultant, opined that Pacheco could lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk about six hours in an eight-hour day, sit about six hours in an eight-hour day, and occasionally reach with the left upper extremity. AR 17, 264, 266. The ALJ gave "great weight" to Dr. Pataki's opinion. A non-examining physician's opinion may also constitute substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The RFC precluded overhead reaching with the left arm and forceful use of the left arm. AR 16.

Pacheco argues the RFC does not contain the limitation of occasional reaching with the left upper extremity because "[r]eaching encompasses reaching in all directions, not just overhead." JS 27. The Social Security Regulations define reaching as "extending the hands and arms in any direction." SSR 85-15. Thus, Pacheco correctly argues that the preclusion of overhead reaching with the left arm does not cover reaching in all directions.

The Commissioner argues that the RFC limitation precluding forceful use of Pacheco's left arm adequately accounts for Dr. Pataki's finding that Pacheco had limited push/pull capabilities. JS 28. The Commissioner conflates the function of being able to reach with that of being able to push or pull. "[P]ushing[] and pulling" are "primary strength activities," and are therefore "exertional." SSR 83-10. By contrast, a limitation on an individual's ability to reach is a "nonexertional

11

impairment," or an "impairment which does not directly affect the ability to . . . push[] or pull." *Id.* Due to the ALJ's vague preclusion of "forceful use of the left arm," it is unclear whether the ALJ adopted Dr. Pataki's limitation of occasional reaching with the left upper extremity.

On remand, the ALJ must clarify whether the RFC includes a limitation for occasional reaching with the left upper extremity.

### G. Step Five

Pacheco contends the ALJ erred at Step Five by not asking the VE if his testimony was consistent with the Dictionary of Occupational Titles ("DOT").[7]

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry*, 468 F.3d at 1114. If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits. *Id.* "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (footnote omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009). Social Security Ruling 00-4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the VE's testimony, and "then determine whether the VE's explanation for the

---

[7] The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

12

conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435. Remand may not be necessary if the procedural error is harmless, i.e., when there is no conflict or if the VE had provided sufficient support for her conclusion so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

Both parties agree that the ALJ did not ask the VE if there were any conflicts between the VE's testimony and the DOT. Pacheco argues the error was not harmless. She argues there is an "apparent inconsistency" between the RFC limiting Pacheco to simple, repetitive tasks and the order clerk job, which requires a Reasoning Level of 3; between the preclusion from working around noise and the table rock worker job, which involves moderate noise; between the preclusion from working around bright light and the order clerk and table rock worker jobs, as "bright lighting rather than subdued lighting is inherent in both of those jobs;" between a limitation of occasional reaching with the left upper extremity and the order clerk and table rock worker jobs, which require frequent reaching; between the preclusion from forceful gripping and the order clerk and table rock worker jobs, which require frequent handling.

Because this matter is being remanded for clarification of the RFC and reevaluation of Pacheco's credibility, on remand, the ALJ shall base the hypothetical on the clarified RFC and obtain an explanation for any deviation from the DOT.

13

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 2, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge

14